UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

CAROLINA FONTANETA PEREIRA, *a/k/a* CAROLINA FONTANETI,

        *Plaintiff*,

        *v*.

MC2 MODELS MANAGEMENT, LLC, *and* JEFFERY FULLER, *individually*,

        *Defendants*.

------------------------------------------------------------------------×

**16 CV** 8739

**COMPLAINT**

        Plaintiff Carolina Fontaneta Pereira, a/k/a Carolina Fontaneti, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants MC2 Models Management, LLC and Jeffery Fuller as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff Carolina Fontaneta Pereira, a/k/a Carolina Fontaneti ("Plaintiff" or "Ms. Fontaneti") seeks damages and costs against Defendant MC2 Models Management, LLC ("Defendant MC2" or "MC2") for misrepresentation, negligent misrepresentation, fraud, breach of fiduciary duty, and promissory estoppel, in violation of the New York State common law, for deliberately failing to correctly represent the material terms of a modeling agreement and associated modeling jobs.

        2.     Plaintiff also seeks injunctive relief against Defendant MC2 and Defendant Jeffery Fuller ("Defendant Fuller" or "Mr. Fuller") (collectively, "Defendants") for tortious interference with business relations, breach of contract, and breach of the duty of good faith and fair dealing, in violation of the New York State common law, for refusing to provide her a letter of release, thereby prohibiting her from seeking work with other modeling agencies.

1

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

   a. Plaintiff is a citizen of the country of Brazil.

   b. Upon information and belief, Defendant MC2 is a citizen of the State of Florida, as it is a corporation organized under the laws of the State of Florida.

   c. Upon information and belief, Defendant Fuller is a citizen of the State of New York.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

5. Plaintiff respectfully requests a trial before a jury.

## PARTIES

6. Plaintiff, at all times relevant hereto, was and is a citizen of Brazil and currently resides in Brazil.

7. Upon information and belief, at all times relevant hereto, Defendant MC2 was and is a limited liability company organized under the laws of the State of Florida and with its principal place of business in the State of Florida. Defendant MC2 has offices located at 6 West 14th Street, 2nd Floor, New York, New York 10011.

8. Upon information and belief, at all times relevant hereto, Defendant Fuller was and is a resident of the State of New York.

**STATEMENT OF FACTS**

9. Ms. Fontaneti is a well-known, experienced model from São Paulo, Brazil, who has appeared on the cover of notable fashion magazines, including *Vogue Brazil* and *Elle Singapore*. Ms. Fontaneti speaks Portuguese and has limited knowledge and use of the English language.

10. Since July 7, 2014, Ms. Fontaneti has been represented in the United States by MC2. According to the terms of the Exclusive Management Agreement (the "Employment Contract") MC2 entered into with Ms. Fontaneti, MC2's representation of Ms. Fontaneti continues for three (3) years from the date of the execution of the Agreement (July 7, 2017).

**I.   Failure to Correctly Represent Material Terms of Modeling Contract**

11. In and around June 2015, Mr. Fuller, MC2's owner and Ms. Fontaneti's representative at MC2, contacted Ms. Fontaneti about Job #: B1111-002871-00 (the "Job"), a photo shoot for General Motors ("GM") to generate images (the "Images") for an international Cadillac automobile advertising campaign (the "Campaign").

12. When he contacted Ms. Fontaneti about the Job, Mr. Fuller stated that the Campaign would be limited to a brochure or catalog and that Ms. Fontaneti would be unidentifiable in all Images.

13. Thereafter, a contract (the "GM Contract") was produced for the Job.

14. Since Ms. Fontaneti is not proficient in written English, she relied on Mr. Fuller to interpret the GM Contract.

15. Mr. Fuller, who was aware of Ms. Fontaneti's limited understanding of written English, assured Ms. Fontaneti that the language of the GM Contract was in keeping with his earlier promise that Ms. Fontaneti's recognizable image would not be used.

16. In reliance upon Mr. Fuller's promise that her face would not appear in any of the Images, Ms. Fontaneti signed the GM Contract, which stated that Ms. Fontaneti would be compensated three thousand dollars ($3,000) for the Job, well below Ms. Fontaneti's usual rate.

17. However, Mr. Fuller's promise turned out to be false; in fact, the GM Contract provided for full images of Ms. Fontaneti and a broad release of those images.

18. On June 25, 2015, Ms. Fontaneti arrived at the Job around 7:30 a.m.

19. Upon arriving, Ms. Fontaneti learned that the Images would be widely distributed and realized that she would be recognizable in the Images, as her face was fully visible in various shots.

20. As Ms. Fontaneti understood the GM Contract to require all Images to be "unidentifiable," she immediately contacted Mr. Fuller to inform him of the situation and ask his advice.

21. However, Mr. Fuller dismissed Ms. Fontaneti's concerns and encouraged her to continue with the Job, reassuring her that she would not be recognizable in any of the Images.

22. When Ms. Fontaneti repeated her concern that the terms of the GM Contract were potentially being violated, Mr. Fuller again refused to address the issue, telling her only that they would talk later and ending the conversation.

23. When the Images appeared approximately one month later in GM's international advertising campaign, Ms. Fontaneti found that she was indeed identifiable and that the Images were widely distributed.

24. Ms. Fontaneti saw the Images in John F. Kennedy International Airport and learned that they also appeared on a billboard in Union Square, in various international fashion magazines including *W* and *GQ*, and in a number of automobile magazines. Several of Ms.

Fontaneti's friends and acquaintances mentioned to her that they had seen the advertising campaign and recognized Ms. Fontaneti in the Images, as well.

25. Ms. Fontaneti received one thousand two hundred dollars ($1,200) for the Images to be used in a motor show, but was provided no other additional compensation for an international, high-profile advertising campaign in which she was clearly recognizable.

26. Based on her prior experiences completing comparable ad campaigns, Ms. Fontaneti could expect to earn as much as sixty thousand dollars ($60,000) for such work.

27. Ms. Fontaneti again attempted to tell MC2 that the GM Contract had been violated, yet, as before, MC2 refused to address her concerns.

28. Mr. Fuller told Ms. Fontaneti that the Job was "take it or leave it," and simply reiterated that she "should be unrecognizable" in the Images.

29. However, when Ms. Fontaneti showed Mr. Fuller the Images, in which she was clearly recognizable, he responded only that MC2 "couldn't do anything for [her]."

**II.     Failure to Provide a Letter of Release**

30. MC2 has failed and refused to perform its obligations under the Employment Contract for the last several months.

31. MC2 has taken Ms. Fontaneti off of its website and has made no effort whatsoever to promote and/or represent Ms. Fontaneti's modeling career.

32. Since MC2 has refused to promote Ms. Fontaneti, has not featured Ms. Fontaneti on its website for the last two (2) months, and has refused to otherwise represent, advise, or counsel Ms. Fontaneti in her modeling career, MC2 has violated the "Scope of Services" section of the Employment Contract and is in breach of the Employment Contract.

33. In the few instances MC2 did arrange for work for Ms. Fontaneti, it misrepresented to her the nature, scope, and compensation of the job to illegally further MC2's own ends.

34. While refusing to perform its obligations under the Employment Contract, MC2 simultaneously refuses to release Ms. Fontaneti from the Employment Contract, thereby actively and maliciously preventing her from working in the United States.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Misrepresentation in Violation of the New York State Common Law
### Against Defendant MC2
### (Damages)

35. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 34 with the same force as though separately alleged herein.

36. Defendant MC2 made a representation of material fact as part of making the GM Contract, namely, that Plaintiff would not be recognizable in any of the Images and that the scope of the Campaign would be limited to a brochure or catalog.

37. Defendant MC2's representation was false when it was made.

38. Plaintiff would not have entered into the GM Contract if she had known that Defendant MC2's representation was false.

39. Defendant MC2's representation about the GM Contract caused Plaintiff to suffer a loss by inducing her to agree to significantly reduced rates.

40. Plaintiff's loss benefited Defendant MC2 by currying favor with potential future clients for other models.

41. As a direct and proximate consequence of Defendant MC2's misrepresentation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

6

## SECOND CAUSE OF ACTION
### Negligent Misrepresentation
### in Violation of the New York State Common Law
### Against Defendant MC2
### (Damages)

42. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

43. Defendant MC2 made a representation of material fact as part of making the GM Contract, namely, that Plaintiff would not be recognizable in any of the Images and that the scope of the Campaign would be limited to a brochure or catalog.

44. Defendant MC2's representation to Plaintiff was false at the time it was made.

45. Defendant MC2 did not bother to find out whether its representation to Plaintiff was false or true.

46. Plaintiff would not have entered into the GM Contract if she had known that Defendant MC2's representation was false.

47. Defendant MC2's representation about the GM Contract caused Plaintiff to suffer a loss by inducing her to agree to significantly reduced rates.

48. Plaintiff's loss benefited Defendant MC2 by currying favor with potential future clients for other models.

49. As a direct and proximate consequence of Defendant MC2's negligent misrepresentation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

## THIRD CAUSE OF ACTION
### Fraud in Violation of the New York State Common Law
### Against Defendant MC2
### (Damages)

50. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 49 with the same force as though separately alleged herein.

51. Defendant MC2 made a statement to Plaintiff that Plaintiff would not be recognizable in any of the Images and that the scope of the Campaign would be limited to a brochure or catalog.

52. Defendant MC2's statement was false and was made with an intent to deceive.

53. Plaintiff acted in reasonable reliance on Defendant MC2's statement when deciding to accept the Job and enter into the GM Contract.

54. As a direct consequence of Defendant MC2's fraud, Plaintiff has suffered, and continues to suffer, substantial economic damages.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**in Violation of the New York State Common Law**
**Against Defendant MC2**
**(Damages)**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. A fiduciary relationship existed between Plaintiff and Defendant MC2: Plaintiff placed her trust and confidence in Defendant MC2's integrity and fidelity, and she made financial decisions based on Defendant MC2's advice and representations in light of this fiduciary relationship.

57. Defendant MC2 breached its fiduciary duty to Plaintiff when it acted contrary to Plaintiff's interest in misrepresenting to her the terms of the GM Contract.

58. As a direct consequence of Defendant MC2's breach, Plaintiff has suffered, and continues to suffer, substantial economic damages.

## FIFTH CAUSE OF ACTION
### Promissory Estoppel in Violation of the New York State Common Law
### Against Defendant MC2
### (Damages)

59. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 58 with the same force as though separately alleged herein.

60. Defendant MC2 made a clear and unambiguous promise to Plaintiff that she would not be recognizable in any of the Images produced during the Job.

61. Plaintiff acted in reasonable and foreseeable reliance on Defendant MC2's promise in making her decision to accept the Job and enter into the GM Contract.

62. In reliance on Defendant MC2's promise, Plaintiff therefore agreed to accept compensation for the Job well below her usual rate.

63. As a direct consequence of her reliance on Defendant MC2's promise, Plaintiff has suffered, and continue to suffer, substantial economic damages.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Business Relations
### in Violation of the New York State Common Law
### Against All Defendants
### (Injunctive Relief)

64. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 63 with the same force as though separately alleged herein.

65. Plaintiff and Defendants entered into a valid contractual agreement (the Employment Contract) together.

66. Defendants had full knowledge of their obligations under the Employment Contract.

67. Defendants have intentionally and improperly interfered with Plaintiff's business relations by refusing to release Plaintiff from the Employment Contract and simultaneously

refusing to promote or represent Plaintiff according to their obligations under the Employment Contract, thereby preventing Plaintiff from working in the United States.

68. As a direct and proximate consequence of Defendants' contractual interference, Plaintiff has been prevented from working and from seeking work.

**SEVENTH CAUSE OF ACTION**
**Breach of Contract in Violation of the New York State Common Law**
**Against All Defendants**
**(Injunctive Relief)**

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. Plaintiff and Defendants entered into a valid contractual agreement (the Employment Contract) together.

71. Plaintiff fulfilled her duties under the Employment Contract by notifying Defendants immediately of all modeling and entertainment offers submitted to her and referring to Defendants any requests for the use of her services or her likeness.

72. By refusing to advise or counsel Plaintiff in her modeling career, Defendants have failed to perform their duties under the Employment Contract.

73. As a direct and proximate consequence of Defendants' failure to perform their duties under the Employment Contract, Plaintiff has been prevented from working and from seeking work.

**EIGHTH CAUSE OF ACTION**
**Breach of the Duty of Good Faith and Fair Dealing**
**in Violation of the New York State Common Law**
**Against All Defendants**
**(Injunctive Relief)**

74. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 73 with the same force as though separately alleged herein.

75. Plaintiff and Defendants entered into a valid contractual agreement (the Employment Contract) together.

76. By refusing to promote or represent Plaintiff, Defendants acted in a manner that, although not expressly forbidden by any contractual provision, acted to deprive Plaintiff of the right to receive her benefits under the Employment Contract.

77. The implied promise is not contrary to any express provision in the Employment Contract.

78. Defendants' breach is not a breach of an express provision in the Employment Contract.

79. As a direct and proximate consequence of Defendants' breach, Plaintiff has been prevented from working and from seeking work.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, an injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein and from engaging in any action that would result in Plaintiff's inability to seek work with other modeling agencies, prevent Plaintiff from performing the tasks necessary to seek work with other modeling agencies, or hinder Plaintiff's performance of these tasks in any way;

G. For the seventh cause of action, an injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein and from engaging in any action that would result in Plaintiff's inability to seek work with other modeling agencies, prevent Plaintiff from performing the tasks necessary to seek work with other modeling agencies, or hinder Plaintiff's performance of these tasks in any way;

H. For the eighth cause of action, an injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein and from engaging in any action that would result in Plaintiff's inability to seek work with other modeling agencies, prevent Plaintiff from performing the tasks necessary to seek work with other modeling agencies, or hinder Plaintiff's performance of these tasks in any way; and

I. For such other and further relief as the Court deems just and proper.

[SIGNATURE ON FOLLOWING PAGE]

Dated: New York, New York
November 10, 2016

By: *(signature)*
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*